IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBIN P. B.,[1]

    Plaintiff,

        v.                                  Civil No. 3:21-cv-00446-JAG

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Plaintiff was fifty years old at the time of her benefits application and has no past relevant work history. (R. at 242, 252, 269.) Plaintiff alleges she is unable to work due to dyslexia, bipolar disorder, depression, and anxiety. (R. at 268.)

On October 17, 2019, an Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act and denied her applications for disabled widow's benefits and supplemental security income. (R. at 21-34.) After exhausting her administrative remedies, Plaintiff seeks review of the ALJ's decision by filing a motion and supporting memorandum for summary judgment. (Pl.'s Mot. Summ. J. 1 (ECF No. 23); Pl.'s Mem. Supp. Summ. J. 1 (ECF No. 24) ("Pl.'s Mem.").) Defendant

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

moves to remand the matter pursuant to the fourth sentence of 42 U.S.C. § 405(g). (Def.'s Mot. Remand 1, (ECF No. 26) ("Def.'s Mot.").) Subsequently, Plaintiff opposes Defendant's motion to remand for further proceedings, arguing that this Court should exercise its discretion to reverse the final decision of the Commissioner and to direct an award of benefits. (Pl.'s Mem. Opp. Def.'s Mot. Remand 1 (ECF No. 28) ("Pl.'s Opp.") This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed the issues which has rendered the matter ripe for review.[2]

Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 23) be GRANTED IN PART to the extent it requests remand and DENIED IN PART to the extent it requests an immediate award of benefits; (2) Defendant's Motion to Remand (ECF No. 26) be GRANTED; (3) the final decision of the Commissioner be REVERSED; and (4) the case be REMANDED for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disabled widow's benefits and supplemental security income on May 29, 2018. (R. at 242, 251.) The Social Security Administration ("SSA") initially denied these claims on October 1, 2018, and again upon reconsideration on November 19, 2018. (R. at 145-154, 160-173.) At Plaintiff's written request, the ALJ held a hearing on August 22, 2019, where Plaintiff appeared with counsel and testified along with a vocational expert. (R. at 49-

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

92, 174.) On October 17, 2019, the ALJ issued a written opinion, denying Plaintiff's claim for benefits from July 1, 2015, through the date of the decision. (R. at 24-34.) On July 27, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 12.) Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35

3

(describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.920(a).

At step four, the ALJ assesses whether the claimant can perform her past work given his residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 26-34.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date.[3] (R. at 26.) At step two, the

---

[3] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do

4

ALJ found that Plaintiff had the following severe impairments: (1) learning disorder; (2) depression; (3) bipolar disorder; and (4) Attention-Deficit/Hyperactivity Disorder ("ADHD"). (R. at 27.) The ALJ decided at step three that Plaintiff did not have an impairment or combination of impairments that meets the severity of one of the listed impairments in the regulations. (R. at 27.) Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity,[4] finding that Plaintiff could perform a full range of work at all exertional levels but with the following non-exertional limitations:

> She requires no special supervision after the task has been learned, but for one (1) to two (2) business weeks following assignment of new tasks, she may require two (2) additional five (5) minute visits per week to ensure understanding of a task as well as proper and timely completion.

(R. at 29-30.) At step four, the ALJ determined that Plaintiff had no past relevant work (R. at 32.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 32-33.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that given Plaintiff's age, education, work experience, and residual functional capacity, she would be able to perform the requirements of

---

less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

various occupations available in the national economy. (R. at 33.) Specifically, the ALJ found that Plaintiff could perform the requirements of representative occupations such as general laundry laborer, room attendant, and final assembler. (R. at 33.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 33-34.)

### IV. ANALYSIS

Plaintiff challenges the ALJ's finding of "not disabled" and argues that the ALJ erred by: (1) failing to evaluate the medical opinion of consultative psychological examiner Erica Hurley, Ph.D. ("Dr. Hurley") in accordance with the regulations; and (2) failing to consider the vocational expert's testimony in the ALJ's written decision. (Pl.'s Mem. at 1.) In response, Defendant contends that this action should be remanded to the Commissioner for further proceedings, including a *de novo* hearing and a new decision that properly accounts for Dr. Hurley's opinion and the vocational expert's hearing testimony. (Def.'s Mot. at 1-2.) (Def.'s Reply Mem. at 9, 11 (ECF No. 29) ("Def.'s Reply").) In opposing remand, Plaintiff argues that "the just remedy to the ALJ's error is to award Plaintiff the benefits that cannot properly be denied on the existing and undisputed record." (Pl.'s Opp. at 4.)

The parties agree that the ALJ's decision should not be upheld. The question presented is whether this action should be remanded to the Commissioner for further proceedings or reversed for an award of benefits. For the reasons set forth below, the Court finds that the ALJ erred in her evaluation of Dr. Hurley's opinion and in her consideration of the vocational expert's testimony. The undersigned will decline to direct the award of benefits but will recommend that this matter be remanded for further proceedings.

**A. The ALJ Erred in Her Evaluation of Dr. Hurley's Opinion.**

*1. Dr. Hurley's Opinion*

On September 20, 2018, Dr. Hurley, a consultative examiner, evaluated Plaintiff's ability to perform work-related activities. (R. at 505.) As part of her assessment, Dr. Hurley utilized the Wechsler Adult Intelligence Scale, performed a medical status evaluation, conducted an interview, and reviewed Plaintiff's records. (R. at 505.) During the evaluation, Plaintiff reported symptoms of depression and anxiety related to the death of her husband in March 2018. (R. at 508-09.) She added that she is the primary caretaker of "four dogs, seven cats," and her twenty-one-year-old son, who has "high functioning Asperger's [Syndrome]." (R. at 507, 509.) Plaintiff also informed Dr. Hurley that she smoked marijuana daily, drank approximately four nights a week, and had not taken mental health medication since 2014. (R. at 507-508.) Dr. Hurley noted that Plaintiff appeared somewhat easily distracted but responded well to redirection. (R. at 509.) After Dr. Hurley completed the evaluation, she summarized that:

> [Plaintiff's] ability to perform detailed and complex tasks is estimated to be markedly impaired due to her specific learning disabilities. She would have no more than mild difficulty maintaining regular attendance in workplace due to depressive symptoms. Her ability to perform simple and repetitive tasks on a consistent basis is estimated to be mildly to moderately impaired due to ADHD symptoms and depressive symptoms . . . . She would not require special or additional supervision to perform simple work activities within her current skill set . . . [Plaintiff] could accept instructions from supervisors . . . Her ability to deal with the usual stressors encountered in competitive work is estimated to be moderately impaired at the current time due to depressive symptoms.

(R. at 510.)

Dr. Hurley's diagnostic impression was that Plaintiff suffered from a specific learning disability, an adjustment disorder, and ADHD. (R. at 509.) Dr. Hurley found that Plaintiff's symptoms were not consistent with bipolar disorder or major depressive disorder. (R. at 509.)

*2. The ALJ Erred When She Evaluated Dr. Hurley's Medical Opinion.*

As part of her review, the ALJ considered Dr. Hurley's medical opinion, finding it "partially persuasive" in her residual functional capacity analysis. (R. at 32.) However, the parties agree the ALJ failed to explain how Dr. Hurley's medical opinion was supported by the other medical evidence as required by the regulations. (Pl.'s Mem. at 1; Def.'s Reply at 8.) When articulating a finding, the ALJ must "explain how she considered the supportability and consistency factors for [each] medical source's medical opinions." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability is determined by considering the objective medical evidence and the accompanying explanations. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ's failure to consider both supportability and consistency factors is grounds for remand.[5]

In this case, the ALJ properly explained the consistency factor when she summarized Dr. Hurley's findings, noting that Plaintiff "would be capable of performing simple, repetitive tasks, without special supervision, but that her ability to perform these tasks on a consistent basis and deal with stressors would be impaired." (R. at 32.) Further, the ALJ explained that Dr. Hurley's claim that Plaintiff is unable to handle stress was inconsistent with evidence indicating Plaintiff's ability to adapt to stress, such as being the primary caregiver for her late husband and her son with special needs. (R. at 32.)

---

[5] *See e.g.*, *Latisha A. v. Kijakazi*, 2021 WL 5239510, at *7 (E.D.V.A. Oct. 25, 2021); *Ryan G. S. v. Kijakazi*, 2021 WL 8444785, at *8 (E.D.V.A. Aug. 9, 2021); *Marquita F. v. Kijakazi*, 2021 WL 3645101, at *7 (E.D.V.A. July 30, 2021).

Nonetheless, the ALJ failed to articulate whether Dr. Hurley's opinion was supported by other medical evidence in the record. While the ALJ used the word "support" in her written decision, she did not sufficiently explain how Plaintiff's testimony or other evidence failed to support Dr. Hurley's opinion. (R. at 32.) Therefore, the ALJ erred by failing to evaluate the medical opinion of Dr. Hurley in accordance with the regulations.

**B. The ALJ Erred by Failing to Resolve Inconsistencies in the Vocational Expert's Testimony.**

*1. The Vocational Expert's Hearing Testimony.*

At Plaintiff's hearing, the ALJ heard testimony from a vocational expert, who was asked to determine the extent to which Plaintiff's limitations "erode the occupational base of unskilled work at all exertional levels." (R. at 33.) The ALJ asked the vocational expert a series of hypothetical questions. (R. at 84-92.) In her first hypothetical to the vocational expert, the ALJ asked if there was work available in the national economy for an individual with Plaintiff's age, education, language level, and residual functional capacity.[6] (R. at 86-87.) In response, the vocational expert testified that "there is work available" in the national economy (totaling 195,000 jobs), and gave examples of representative occupations Plaintiff could perform, such as general laundry laborer, room attendant, and a final assembly position. (R. at 86-87.)

The ALJ then posed a second hypothetical by describing an individual with the same characteristics, but who required frequent additional supervision to ensure proper and timely completion of tasks. (R. at 87.) The ALJ clarified that the word "frequent" in this context referred to additional visits by a supervisor one to two times per day. (R. at 88.) The ALJ asked the

---

[6] Plaintiff's limitation is that she requires no special supervision after the task has been learned, but for one to two business weeks following assignment of new tasks, she may require two additional five minute visits per week to ensure understanding of a task as well as proper and timely completion. (R. at 29-30.)

vocational expert, in the context of this hypothetical, whether this limitation would preclude work in the national economy, to which the vocational expert responded "yes, ma'am." (R. at 87-88.)

When Plaintiff's attorney questioned the vocational expert, he initially referred to the ALJ's first hypothetical, which included Plaintiff's need for two additional five-minute visits by supervisors one to two business weeks after learning a new task. (R. at 88.) The vocational expert stated that he believed this constituted "borderline accommodated work" and proceeded to describe situations where such a limitation would be escalated to "accommodated work." (R. at 88.) According to the vocational expert, "accommodated work" is work that is not routinely performed in the national economy. (R. at 89.) If a limitation qualifies as an accommodation, then it would preclude work in the national economy. (R. at 89-90.) Thus, whether a limitation is accommodated or not is relevant to an ALJ's step five determination. (R. at 88-91.) The ALJ requested the following clarification from the vocational expert after the attorney's examination:

> Q: And I just want to clarify one thing, Mr. Lester. You indicated, at the beginning of Mr. Bowman's questioning that it was borderline accommodation. I just -- when you say borderline, which side of it does it fall on? Accommodated or non-accommodated?
>
> A: I – with the hypothetical individual that was posed to me, I believe it would be accommodated work.

(R. at 91.) The ALJ then asked Plaintiff's attorney to clarify the hypothetical criteria that resulted in the vocational expert's testimony regarding the "borderline accommodated work." (R. at 91-92.) Plaintiff's attorney responded that the vocational expert's testimony referred to the conditions set forth in the ALJ's first hypothetical, stating "That was the one . . . 1 to 2 business – after 1 or 2 business weeks, may need additional five minutes . . . ." (R. at 92.) The ALJ affirmed that "that was the accommodated portion." (R. at 92.)

10

*2. The ALJ's Consideration of the Vocational Expert's Testimony.*

In her decision, the ALJ recited the portion of the vocational expert's testimony that identified Plaintiff's ability to work as a general laundry laborer, room attendant, or final assembler. (R. at 33, 86-87.) Relying on this testimony, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 33.) This finding, however, conflicts with part of the vocational expert's testimony regarding the hypothetical need for additional visits by supervisors as "accommodated work." (R. at 88, 91.) As discussed, the ALJ found that Plaintiff could perform 195,000 jobs in the national economy. (R. at 33.) However, because "accommodated work" is not routinely performed in the national economy, a residual functional capacity which encompasses "accommodated work" necessarily precludes the existence of available jobs in the national economy which Plaintiff could perform. (R. at 88, 91.) Both parties agree that there exists an ambiguity as to which limitations in the hypothetical questions were found to constitute "borderline accommodated work." (Def.'s Reply at 11, Pl.'s Opp. at 10.)

*3. The ALJ Failed to Resolve the Apparent Conflict Between the Vocational Expert's Testimony and the ALJ's Step Five Findings.*

Plaintiff asserts that the ALJ "cherrypicked" from the vocational expert's testimony and selectively chose evidence that supported the ALJ's decision to deny Plaintiff's application for benefits. (Pl.'s Mem. at 8.) Defendant maintains that given the "confusion" about the vocational expert's testimony, the ALJ could not properly rely on the portions of the vocational expert's testimony that were ambiguous. (Def.'s Reply at 11.) The undersigned agrees and finds that the ALJ failed to resolve the apparent conflict between the vocational expert's testimony and the ALJ's step five findings.

Step five of the evaluation process requires the ALJ to consider a claimant's residual functional capacity, age, education, and work experience in determining whether the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(4)(v), 416.920(4)(v). When making this determination, the ALJ can use various resources, including the testimony or services of a vocational expert. 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)(e). The ALJ, however, is not required to accept the vocational expert's testimony. *Perez v. Barnhart*, 440 F. Supp. 2d 229, 232 (W.D. N.Y. 2006) (emphasis added). This is also true where the vocational expert provides conflicting testimony, because "it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has held that remand for further proceedings and explanation is appropriate where there is conflicting expert evidence or an ambiguous residual functional capacity finding. *Carr v. Kijakazi*, No. 20-2226, 2022 WL 301540, at *4 (4th Cir. Feb. 1, 2022).

In this case, the ALJ's failure to clarify the ambiguity presented by the vocational expert's testimony regarding whether Plaintiff's limitations amounted to an accommodation frustrates this Court's ability to provide meaningful review of the ALJ's residual functional capacity and final decision. If the vocational expert had testified that work done by an individual with Plaintiff's residual functional capacity constituted "accommodated work," then the limitation would necessarily preclude all work in the national economy, and the ALJ would have been directed to find Plaintiff disabled. The ambiguity surrounding what limitation constituted accommodated work frustrates meaningful review because it leaves this Court unable to determine whether there is substantial evidence to support the ALJ's decision. Therefore, the Court agrees that the ALJ erred in her step five analysis.

**C. The Court Recommends Remand for Further Proceedings.**

When the decision of the Commissioner is appealed, this Court has the statutory authority to reverse the administrative decision or remand the case for further proceedings. 42 U.S.C. § 405(g); *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987); *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir.1971). "A judicial award of benefits is appropriate only in rare instances when the record unequivocally supports a finding that the plaintiff is disabled and therefore entitled to an award of benefits." *Holmes v. Astrue*, No. 3:08-1829-CMC-JRM, 2010 U.S. Dist. LEXIS 82266, 2010 WL 3220085 at *4 (D.S.C. Aug. 12, 2010).

Plaintiff contends that reversing and directing an award of benefits is appropriate because the record "clearly" establishes disability. (Pl.'s Opp. at 3-4.) Plaintiff reasons that remand for further proceedings is appropriate only where there is conflicting expert evidence or an ambiguous residual functional capacity finding, and that neither scenario is present in this case. (Pl.'s Opp. at 2.) Defendant responds that because conflicting expert evidence exists to support the ALJ's determination, remand, and not an immediate award of benefits, is appropriate. (Def.'s Reply at 12.) The Fourth Circuit has held that "[a] court may . . . reverse and direct the award of benefits *only* in the unusual case in which it can be determined, even in the absence of an explanation, that there is no account on which substantial evidence could support a denial of benefits." *Carr v. Kijakazi*, No. 20-2226, 2022 WL 301540, at *4 (4th Cir. Feb. 1, 2022) (emphasis added).

In *Carr v. Kijakazi*, the Fourth Circuit concluded that "where the ALJ's insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings, and there is at least conflicting evidence in the record," the appropriate remedy is to remand for further proceedings. *Carr*, 2022 WL 301540, at *3. In that case, the Court noted three instances in which the ALJ failed to provide an explanation for the residual functional

capacity, which made it "impossible" to evaluate whether the evidence was substantial and supported the ALJ's findings. *Id.* at *2-3. Furthermore, the Court deemed the medical record "ambiguous" since it contained opinions from two experts with different conclusions. *Id*. at *3.

The present matter is analogous to *Carr* because the ALJ's errors, as discussed above, render it impossible for this Court to determine whether the evidence was substantial and supported the ALJ's findings. Indeed, the medical opinions relied on by the ALJ and the vocational expert's testimony present conflicting evidence in the record. In her written decision, the ALJ considered the opinions of the state agency medical examiners when crafting Plaintiff's residual functional capacity and found them to be both consistent with the record and "persuasive." (R. at 32.) The state agency medical examiners opined that Plaintiff's limitations would not prevent her from working. (R. at 103, 113, 128, 140.)

This is not the "unusual case" where there is no evidence that could be considered substantial and used to support a denial of benefits. *Carr*, 2022 WL 301540, at *4 (4th Cir. Feb. 1, 2022). Moreover, the ALJ also considered the vocational expert's testimony, which presented evidence that conflicted with the ALJ's step five findings. (R. at 88-89.) Thus, because the duty to resolve evidentiary conflicts rests with the ALJ, not the reviewing court, and there is "at least conflicting evidence in the record" bearing on the ALJ's residual functional capacity assessment, the undersigned recommends that this action be remanded for further proceedings. *Carr*, 2022 WL 301540, at *3; *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 23) be GRANTED IN PART to the extent it requests remand and DENIED IN PART to the extent it requests an immediate award of benefits; (2) the Defendant's

Motion for Remand (ECF No. 26) be GRANTED; (3) the final decision of the Commissioner be REVERSED; and (4) the case be REMANDED for further proceedings.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to Senior United States District Judge John A. Gibney, Jr.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

　　　　　　　　　　　　　　　　　　　　　　/s/ MRC
　　　　　　　　　　　　　　　　　　　　　　Mark R. Colombell
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Richmond, Virginia
Date: June 30, 2022